

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN.

GROVER SELLERS
ATTORNEY GENERAL

*This opinion verruled l*
*Supreme Court*
*R. E. Moore, et al re.*
*George H. Sheppard*

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:

Opinion No. 0-6356

Re: Collection and retention by
clerks of Courts of Civil
Appeals, their deputies, and
stenographers, of certain
"fees of office"; also what
employees of such courts are
required to be bonded and to
whom payable and in what amount;
also question of transferring
funds within the appropriation.

We have received your recent communication in which
you request our opinion on the following questions:

"1. For the Courts of Civil Appeals do fees
and/or charges collected for uncertified copies
of opinions, etc., constitute 'fees of office' and
are they accountable as such by the clerks or other
court employees who collect them?"

"2. If you answer question No. 1 in the af-
firmative, please state the effective dates.

"3. If your answer to question No. 1 is in
the affirmative, should such fees be deposited in
the State Treasury to the credit of the State Gen-
eral Revenue Fund?

"4. If your answer to question No. 1 is in
the affirmative, and it is found that a clerk,
deputy clerk, stenographer or any other employee
of the Court of Civil Appeals has retained such
fees, should such employee reimburse the State by
now depositing all such fees in the State Treasury

Honorable C. E. Cavness, page 2

and what State agency should follow through in the collection of such fees from such Court employees?

"5. Can a clerk of the Court of Civil Appeals legally file an affidavit with the State Comptroller for an employee of the court, other than himself, under the law requiring the filing of affidavits by court employees as to fees collected? (We found instances where the clerk of the court filed an affidavit which stated that an assistant, a Deputy Clerk, had not retained any fees).

"6. Should surety bonds furnished by clerks and/or other employees of the respective Courts of Civil Appeals, either personal bonds or other types of performance bonds, be renewed upon each appointment to term of office or can a bond furnished upon the original appointment suffice for successive appointment? Also, who should be bonded and to whom should the bonds be payable? Further, in what amounts should these bonds be, and should the respective employees pay the premiums on such bonds, or can such premiums be legally paid from the maintenance appropriation allotted to the respective Courts of Civil Appeals?

"7. Under the appropriation bills for the three-year period ended August 31st, 1944 for the Courts of Civil Appeals can such courts legally expend moneys directly from their appropriations for books, for other things (as telephone service, postage, repairs to equipment) and for the purchase of equipment?

"8. We found in one of the courts that the Clerk of the court had purchased two $500.00 U. S. Defense Bonds out of a special bank account which represented fees received by the Court Clerk for uncertified copies of opinions, etc., and was an accumulation of such fees over a period of several years. These fees were being carried in the special bank account as the clerk was not sure whether such fees would eventually belong to him or to the State of Texas. The bonds were made payable to

Honorable C. H. Cavness, Page 3

the clerk of the Court and/or his wife. Question:
Can any employee of a Court of Civil Appeals le-
gally invest such funds, held in escrow for final
determination as to ownership, in any type invest-
ment or should such funds remain in the form of
cash (or on deposit in a bank)?

"9. We found in several of the courts that
the clerks of such courts are collecting 'postage'
money from attorneys and others, to cover the cost
of mailing papers to the Supreme Court, etc. We
find that in some courts this money is not made a
part of the court's cash receipts but is retained
by the Clerk of the Court and as he mails such
papers he pays the postage out of his pocket, all
of which means that no accurate record is main-
tained of the cash receipts and disbursements cov-
ering this postage money. Question: Is there a
legal authorization for the clerks to make these
postage collections and should they be accounted
for in the same manner as other fees of office,
whether or not legally authorized?"

For the sake of clarity, we will answer your ques-
tions separately and in numerical order.

To question No. 1 we answer as follows:

Article 3924, V. A. C. S., reads in part:

"The clerks of the Courts of Civil Appeals
shall receive the following fees: . . . Making
copies of any papers or records in their offices,
including certificate and seal, for each 100
words . . . . . . . . . . . . . . . . . . .      .10
. . . .For certificate and seal, where same is
necessary . . . . . . . . . . . . . . . . .      .50
. . ."

Said Article 3924 was enacted in its present form
in 1893, and the herein quoted provisions of same constitute
the only statement within said Article that conceivably could
be construed as providing for the collection of fees for un-
certified copies of opinions delivered out of the office of
the Clerk of the Court of Civil Appeals. In 1929, by opinion

Honorable C. M. Cavness, Page 4


No. 2767, this Department held that such provisions as contained in said Article 3924 were "intended to include only such copies that are certified". We believe that this opinion is sound and truly expresses the law in regard to said Article 3924 in question, but in regard to other matters whereby the holding in said opinion may seem conflicting with the holding herein, we point out that the Act of the Legislature involved in said opinion is separate and distinct from the acts herein considered. We herewith enclose a copy of said opinion No. 2787 (Book 63, page 273).

However, in 1933, the 43rd Legislature enacted a statute (page 59, General Laws of Texas, 1933) providing that the salaries of all state officers and employees, except judges of certain courts, etc. should be for the period beginning September 1, 1933, and ending August 31, 1935, such sums or amounts as may be provided for by the Legislature in the general appropriation bill, and that all laws and parts of laws fixing the salaries of such state officers and employees were thereby specifically repealed, in so far as they conflicted with such Act. Then in Section 3 of the general appropriation bill enacted by said Legislature, the following language appeared:

"All fees paid to clerks or officers, or other employees, of all appellate courts named herein, either for official or unofficial copies of opinions, or for other services or documents, shall be deposited monthly in the State Treasury, and none of such fees shall be retained by said officers or clerks."

The subject matter of the above quoted provisions was adequately contained in the caption of said general appropriation bill.

Acts substantially the same as that found at page 59 in the General Laws of Texas, 1933, separate and apart from the general appropriation acts, were enacted by each succeeding Legislature, including the current one. (Acts 1935, p. 124; Acts 1937, p. 1339; Acts 1939, p. 619; Acts 1941, p. 813; Acts 1943, p. 415). Also, each such succeeding Legislature enacted provisions in their general appropriation bills regarding the disposition of such fees received by said clerks and other employees for official or unofficial copies of opinions, etc., similar to the hereinabove quoted provisions. Bearing this

in mind, we believe that the above quoted provisions of all the appropriation acts, beginning with 1933 to the present, to be valid and subsisting and the only law controlling the disposition of such fees. In this view, we are supported by an opinion of this department written in 1939, wherein similar provisions contained in the general appropriations Act of 1937 were sustained. We are enclosing herewith a copy of this opinion No. O-316, with the statement that where such opinion conflicts with our views expressed herein, said opinion No. O-316 is overruled to that extent. We also overrule a letter opinion of date October 17, 1933, by Scott Gaines and E. E. Anderson, Assistant Attorneys General, to S. A. Philquist, Clerk of the Court of Civil Appeals, a copy of which was submitted to us with your request for an opinion on these subjects, as we believe the writers of that letter opinion failed to consider the independent Act of 1933, page 59.

Epitomizing the foregoing, we hold that from August 31, 1933, to the present time, all such fees and/or charges collected in the office of the Clerk of the Court of Civil Appeals for uncertified copies of opinions constitute "fees of office" and should be accounted for as such.

The above fully answers your question No. 2.

We answer your question No. 3 as follows: All such fees so collected from August 31, 1933, to the present should be deposited in the State Treasury to the credit of the General Revenue Fund.

Our answer to your question No. 4 is that all such fees so collected should be accounted for and disposed of as directed in our answer to your question No. 3. As to the second part of such question, we quote from Article 4344, V. A. C. S., as follows:

"Among other duties the Comptroller shall:

"8. Require all persons who have received and not accounted for any money belonging to the State to settle their accounts."

Our answer to your question No. 5 is as follows: Section 3 of the general provisions of the current judiciary appropriation (page 1036, General and Special Laws of Texas, 1943) provides that each court employee whose salary is provided therein, except porters, shall file with the Comptroller

Honorable C. H. Cavness, Page 6

the affidavit provided for therein. Like provisions are found in the respective appropriations made for the judiciary in 1935, 1937, 1939, and 1941. We believe these provisions require a personal affidavit from each employee.

Our answer to your question No. 6 is as follows: Article 1827, V. A. C. S., provides for the appointment of a clerk for each Court of Civil Appeals for a term of two years. Article 1833, V. A. C. S., provides that each such clerk may appoint one chief deputy and, with the approval of the court, he may appoint additional deputies, and each deputy shall give bond to the clerk for the faithful discharge of his duty. Also, Article 1828, V. A. C. S., provides for a bond to be made by the clerk for five thousand dollars payable to the Governor, conditioned for the faithful performance of the duties of his office, to be approved by any Judge of his court. Article 1836, V. A. C. S., provides for the appointment by the court of one stenographer, who shall be sworn and who shall give bond for two thousand dollars payable to the State of Texas, conditioned for the faithful performance of his duties, to be approved by the Chief Justice of said Court. The Clerk is the only one for which a definite term of office is provided.

In 34 Texas Jurisprudence on page 604, the following is said in regard to terms of office of deputies generally:

"The constitutional provision limiting the term of officers to two years applies to deputies who are themselves officers, but not to deputies who are not officers. The appointment of a deputy who is not within the constitutional provision, and which is not for any particular duration of time, is coextensive in duration with the tenure of the officer appointing him, and, unless sooner removed, he holds until the expiration of the officer's term, and ceases to hold at that time unless he is reappointed."

In regard to the "office" or "position" of stenographer, as created by said Article 1836, we quote from the case of Robertson v. Ellis County, 84 S. W. 1097, (Civ. App.--No app.) in which the court disposed of the question as to whether or not the position of official stenographer of the district court, created by Acts of 1903, p. 84, which provided that such stenographer should be a sworn officer of the

court and hold office during the pleasure of the court, is
an "office" as that term is used in the Constitutional pro-
hibition against any office having a term exceeding two years
where not fixed by the Constitution. The holding in this
respect is as follows:

> "We conclude that while the position of a
> stenographer, under the statute in this state,
> may be, in a sense, an office, and the term there-
> of may continue for a longer period than two years,
> yet there is no such sovereign function of govern-
> ment embraced in the powers conferred upon the in-
> dividual performing its duties as brings it within
> the meaning of the word 'office' as used in the
> section of the Constitution quoted."

Also see the case of Bexar County v. Gazley, 172 S. W. (2)
702 (Civ. App.--No app.).

In view of the foregoing, we conclude that the clerks
of the Courts of Civil Appeals, their deputies, and the stenog-
raphers, each, should give bonds. The clerk's bond should be
in the amount of five thousand dollars payable to the Governor.
The deputies' bonds should be in a reasonable amount as set by
the clerk and payable to the clerk. The stenographers' bonds
should be in the amount of two thousand dollars payable to the
State of Texas. The clerk and his deputies, each, should give
new bonds upon their appointment to each term of office--the
deputies' terms expiring with the clerk's term. The stenog-
rapher, being an employee of the court, may be appointed for
as long a term as the court may see fit, terminative at any
time at the will of the court, and the original bond would
suffice for the duration of such term, unless otherwise limit-
ed by its terms. We find no provision of the statute or
specific item in the appropriation bill allowing the premiums
on any of such bonds to be paid therefrom. This department
has ruled in similar situations that such bond premiums can-
not be regarded as a contingent item of expense lawfully to
be incurred under the appropriation, and, therefore, such
bond premiums may not be paid out of the contingent expense
fund of such appropriation. We are herewith enclosing a copy
of our opinion No. O-2092, holding to this effect.

Our answer to your question No. 7, is that, under the
general provisions of the last two appropriation bills, which

are similar and cover the period of time in question, the Courts of Civil Appeals are allowed to have transfers or adjustments made between appropriated amounts for books, equipment, maintenance, and contingent items. We believe the Legislature contemplated that upon the request or order of the Court of Civil Appeals such transfers or adjustments should be made between the accounts on the records in the office of the state Comptroller and then a warrant drawn on the proper account to which such transfer or adjustment was made. These provisions appear on page 1037 of General and Special Laws of Texas, 1943, and page 214 of General and Special Laws of Texas, 1941.

Regarding your question No. 8, we refer you to our answer to question No. 3, wherein we specifically point out the proper disposition of such fees. Any other disposition of same is unauthorized by law.

In respect to your question No. 9, we assume the "postage collections" referred to by you, to be the sums sufficient to pay the expressage or carriage of the record collected by the Clerk from parties applying to the Supreme Court for a writ of error. This he is authorized to do by Rule 473, Rules of Civil Procedure, Acts 1939, 46th Legislature. Prior to the enactment of this Rule, the identical provisions of same were contained in Article 1743, Revised Civil Statutes of Texas, 1925. The provisions of said Rule 473 are as follows:

"The petition with the original record in the case, and the opinions of the Court of Civil Appeals, and the motion filed therein, and certified copies of the judgments and orders of the Court of Civil Appeals and copy of the appeal or supersedeas bond shall be filed with the Supreme Court. The party applying for the writ of error shall deposit with the clerk of the Court of Civil Appeals a sum sufficient to pay the expressage or carriage of the record to and from the clerk of the Supreme Court, which sum shall be charged as costs of suit."

We believe that both the statute and the Rule contemplate that the clerk collect a sum no more and no less than the exact amount necessary to pay for the transportation of the record as provided. Therefore, as a matter of law,

Honorable C. H. Cavness, Page 9

after the transportation charges are paid by the Clerk there would be no balance on hand nor a deficit in regard to such sum collected; however, as a practical matter, there is bound to be excess amounts in some instances and insufficiencies in others, due to human errors of miscalculation of the transportation rates, as such calculations are made in advance by necessity. When an insufficient amount is collected by the clerk, we believe he is empowered to collect an additional deposit from the litigant, sufficient to pay for the transportation of the record. Likewise, when an excess remains in the Clerk's hands, after all such transportation charges are paid, we believe he is authorized to, and by right should, return such excess to the litigant who deposited same, as the Clerk is not authorized to receive more than the sum sufficient to pay for such transportation. In any case, we believe the law requires that an accurate account be kept of such receipts and disbursements, as of other costs.

Trusting the foregoing fully answers your questions, we are returning herewith the various instruments in writing which you submitted with your request for an opinion.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Robert L. Lattimore Jr._
Robert L. Lattimore, Jr.
Assistant

APPROVED MAR 25 1945

FIRST ASSISTANT
ATTORNEY GENERAL

RLL:mp
Incl.


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN